FILED
2011 Jan-31  AM 10:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MELVIN L. DAVIS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:08-cv-1243-AKK** |
| **CITY OF BRIGHTON, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Melvin L. Davis ("plaintiff") brings this action against the City of Brighton, Chief of Police Ronald Hall, Officer Ronald A. Smith, and Dispatcher Lativia Harris ("defendants").[1]  Docs. 1 and 3.  Plaintiff sues Chief Hall, Officer Smith, and Dispatcher Harris ("individual defendants") individually and in their official capacities.  Doc. 3 ¶¶ 2-3.  For the reasons set forth below, defendants' motion for summary judgment, doc. 76, is GRANTED.

## I.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits

---

[1]This court entered a default judgment against defendant Ronnie Britton on May 28, 2009.  Doc. 17.  At the time defendants moved for summary judgment, Britton's whereabouts were still unknown.  Doc. 77 at 2 n.1.

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Id*. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

## II.   FACTUAL BACKGROUND[2]

This action arises from Officer Smith's arrest of plaintiff for second-degree assault on Ronnie Britton.  Plaintiff describes Britton as "the bum of Brighton" who was well known in the city and often seen around the home of Earl Haygood. Doc. 77-2, Plaintiff Dep. at 65:19-20, 82:4-14; Doc. 77-4, Smith Dep. at 112. Plaintiff lived across the street from Haygood and hired Britton for an odd job around his house on at least one occasion.  Doc. 77-2, Plaintiff Dep. at 66-68.

On the afternoon of July 14, 2006, Britton came to plaintiff's house to sell "a shovel, a tree limb saw, and some old LP albums."  Doc. 77-2, Plaintiff Dep. at 45:16-18.  Plaintiff looked at the items while standing in his driveway and told Britton he was not interested.  *Id*. at 45-46, 60-61.  Britton, who apparently does not take rejection well, responded that "he was going to kick [plaintiff's] ass," set the items on the ground, and walked toward plaintiff.  *Id*. at 46:16-14; 61:14-23. Plaintiff retreated into his house and "called Brighton [police] to send someone out, because this guy was drunk and he was trying to jump me."  *Id* at 47:17-48:1.

Later that afternoon, plaintiff looked out the windows of his house and did not see Britton.  Doc. 77-2, Plaintiff Dep. at 75:15-21.  Consequently, plaintiff called the Brighton police department for a second time to "[t]ell them that they

_____

[2]The facts are presented in the light most favorable to plaintiff.

3

may not have to come out because [Britton] was gone." *Id.* at 77:16-19. Thinking it was safe to do so, plaintiff walked to Haygood's house to ask Haygood to tell Britton to leave plaintiff alone. *Id.* at 80:12-17.

As plaintiff approached Haygood's house, Britton yelled, "I got you now," and came toward plaintiff with a shovel, *Id.* at 85:10-16, – apparently determined to use the shovel on plaintiff for refusing to buy it or the other items. Plaintiff retreated to Haygood's porch and stood between the front door and the screen door while Britton "jabbed" him with the shovel. *Id.* at 86:6-87:19. In response, plaintiff "leaped over and grabbed the shovel . . . and some kind of way . . . tussled onto the sidewalk." Doc. 77-2, Plaintiff Dep. at 88:12-15. Plaintiff "flipped" Britton over his shoulder, struggled for possession of the shovel, and "hit [Britton] a couple of times" with the shovel. *Id.* at 89-92. Plaintiff returned to his house and called the Brighton police for a third time.[3] *Id.* at 99:4-15.

---

[3]Harris testified that she was the dispatcher on duty from 8:00 a.m. to 4:00 p.m. that day, and that the only call she received from plaintiff was this third call. Doc. 77-6, Harris Dep., at 87, 144-46. Harris testified that it was not possible that plaintiff called earlier that day, as he claims, because the dispatch log only shows one call from plaintiff. *Id.* Harris further testified that it was not possible that she failed to record any other calls. *Id.* Notably, plaintiff takes issue with the fact that the line of the dispatch log for 1:44 p.m. was "whited out." Doc. 87-2, Dispatch Log. Harris testified that the 1:44 p.m. entry reflected that Smith took a break and returned to his shift at 2:10 p.m. Doc. 77-6, Harris Dep., at 106. Presumably, plaintiff is contending that the 1:44 p.m. entry logged his first or second call, or both, which defendants contend they never received.

Harris dispatched Officer Smith to plaintiff's street regarding a man laying in the road at or about 3:58 p.m.  Doc. 77-6, Harris Dep. at 108:4-13.  After arriving at the scene, Smith called an ambulance because Britton's head was "split open and a lot of blood [was] coming out," and Britton complained that "[h]e couldn't move his hip."  Doc. 77-4, Smith Dep. at 111:1-119:3, 162:11-18. Britton told Smith that plaintiff attempted to steal his wine, he defended himself with a shovel, and, ultimately, plaintiff took the shovel and hit him with it.  *Id*. at 113:9-114:8.[4]

At some point, plaintiff went over toward Smith, holding the shovel, and stated:  "[T]his is the shovel that [Britton] was using on me, and I was defending myself."  Doc. 77-2, Plaintiff Dep. at 104:21-105:4, 108:1-3.  Smith, who plaintiff characterizes as a "dirty" officer, asked plaintiff "if [he] had any money or something like that," which made plaintiff "angry" and caused him to refuse to further speak.[5]  *Id*. at 105-09.  Smith took the shovel from plaintiff, handcuffed

---

[4]The record is silent on whether Britton succeeded in defending his wine.  Because plaintiff ended up with the shovel, the court assumes Britton fell short in his defense.  Notably, however, plaintiff testified that he "hate[s] alcohol," and does not drink wine.  Doc. 77-2, Plaintiff Dep. at 10-11, 116.  Thankfully, the court need not solve the mystery of the origins of the altercation in resolving the current dispute before it.  The court is certain, however, that Britton learned a valuable lesson and will never try to use force again to sell his merchandise.

[5]Smith's account of the interaction differs in that Smith testified that plaintiff talked continuously about the altercation before the ambulance arrived and that Smith told plaintiff to "hold on," because he did not want plaintiff "to tell [him] that he did something and then it be recanted because [he] didn't read [plaintiff] his rights."  Doc. 77-4, Smith Dep. at 116:23-117:2.

him, and placed him in the back of his police car, telling him to "just have a seat in

the back seat until I finish with . . . [Britton]."  Doc. 77-4, Smith Dep. at 119:7-12;

Doc. 77-2, Plaintiff Dep. at 110:16-22.

After the ambulance arrived, Smith took plaintiff to City Hall for further

questioning.  Doc. 77-4, Smith Dep. at 124:9-11, 129:1-5, 133-34.[6]  There, Smith

read plaintiff his *Miranda* rights, and plaintiff declined to answer Smith's

questions about the altercation.  *Id*. at 134, 217-19.  Smith arrested plaintiff for

assault and placed him in a holding cell.  *Id*.  The next day, Smith obtained a

warrant against plaintiff for second-degree assault.  *Id*. at 219.  A grand jury

indicted plaintiff for first-degree assault, doc. 88-5, Indictment, and plaintiff

remained in jail for more than a year pending his trial because he was unable to

post bond, doc. 3 ¶¶ 33-38.  After a trial on August 27 and 28, 2007, a jury

acquitted plaintiff of all charges.  Doc. 88-6, Case Action Summary.  Plaintiff filed

this action 10 months after his acquittal. Doc. 1.

### III.  ANALYSIS

Five federal counts and one supplemental state-law count remain in this

action:  Count I alleges that the individual defendants violated the Fourth

---

[6]Chief Hall arrived to the scene as Britton was loaded into the ambulance.  Doc. 77-5,
Hall Dep. at 29:13-14.  It is undisputed that "Chief Hall did not participate in the arrest of
[plaintiff]."  Doc. 77 at 5 ¶ 18; Doc. 84 at 5.

Amendment by arresting plaintiff without probable cause; Count II alleges that the individual defendants violated the Fourth and Fourteenth Amendments by maliciously prosecuting plaintiff; Count III alleges that Hall and Harris violated plaintiff's "constitutional rights" by "separately or in concert, intentionally fail[ing] to intercede on behalf of [plaintiff] when [plaintiff's] constitutional rights were being violated by Smith"; Count IV alleges that the individual defendants conspired to unlawfully arrest and maliciously prosecute plaintiff; Count V alleges municipal liability against the City of Brighton, asserting that the individual defendants subjected plaintiff to an unlawful arrest and malicious prosecution in accordance with the city's "long standing custom or practice"; Count VII alleges supplemental state-law claims of conspiracy, false arrest and imprisonment, and malicious prosecution against Smith.[7]  Doc. 3.  The court addresses the federal claims first.

## A.     Federal Claims

Plaintiff pursues his federal claims under 42 U.S.C. § 1983, which creates a cause of action against persons who violate the Constitution and federal laws while acting under state government authority.  Specifically, § 1983 provides that

---

[7]Count VI alleges supplemental state-law claims of assault, harassment, and trespass against Britton, and Count VII alleges conspiracy, false arrest and imprisonment, and malicious prosecution against Britton.  Doc. 3 ¶¶ 60-67.  Because the court previously entered a default judgment against Britton, doc. 17, it need not address these claims further.

"[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."  Therefore, "[§] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (plurality) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)).  The first step in addressing any § 1983 claim is "to identify the specific constitutional right allegedly infringed."  *Id*.

Here, plaintiff's § 1983 claims are all based on the allegation that Officer Smith lacked probable cause to arrest him for second-degree assault and, therefore, violated his Fourth Amendment right to be free from unreasonable seizures.  Defendants contend that Smith is entitled to qualified immunity for liability on this claim, and, therefore, they contend that plaintiff failed to establish any constitutional violations to underlie his § 1983 claims.  Consequently, defendants argue that the federal claims fail.  The court agrees.

1.    *Officer Smith is entitled to qualified immunity for plaintiff's claim of false arrest - Count I.*[8]

---

[8]Plaintiff sues the individual defendants in their official and individual capacities. However, it is well established that a § 1983 suit against an officer in his or her official capacity is treated as a claim against the city. *Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176, 1184-85

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 129 S. Ct. at 815.  "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Id*. (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

A defendant asserting that he is entitled to qualified immunity must first establish that he was engaged in a discretionary duty during the event in question, *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008), which is not disputed

---

(M.D. Ala. 1999) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  Therefore, plaintiff's § 1983 claims against the individual defendants in their official capacities are due to be dismissed.  Further, Counts I and II allege that the *individual defendants* "separately or in concert" arrested plaintiff without probable cause and maliciously prosecuted him, but it is undisputed that Hall and Harris had no direct involvement in the arrest or prosecution.  Doc. 3. ¶ 50; Doc. 77 at 7, n.3.  Indeed, plaintiff admitted defendants' undisputed facts that "[Harris] was off duty and had already left the jail when [plaintiff] was placed under arrest," and that "Chief Hall did not participate in the arrest of [plaintiff]."  Doc. 77 at 5 ¶¶ 17-18; Doc. 84 at 5.  Therefore, Counts I and II are dismissed against Hall and Harris, individually.

in this case.  The burden then shifts to the plaintiff to show that the defendant is not entitled to qualified immunity.  *Id*.  In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for addressing qualified-immunity claims: (1) the court first decides whether the facts alleged or shown by a plaintiff make out a violation of a constitutional right; and (2) the court then decides whether the right was "clearly established" at the time of the alleged violation.  *Id*. at 201.  The Supreme Court held recently that courts are no longer required to consider these questions in order.  *See Pearson*, 129 S. Ct. at 818.

The right to be free from arrest without probable cause was clearly established at the time of the arrest at issue here.  *See Thornton v. City of Macon*, 132 F.3d 1395, 1399 (11th Cir. 1998).  The law is well settled that "[a] warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim."  *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990)).  Specifically, "an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures."  *Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007).  Therefore, this court must determine whether the facts alleged or shown by plaintiff constitute a violation of the Fourth Amendment's protection against unreasonable seizures.  *See Saucier*,

10

533 U.S. at 201.

"In Fourth Amendment terminology, an arrest is a seizure of the person . . . and the reasonableness of an arrest is, in turn, determined by the presence or absence of probable cause for the arrest." *Skop*, 485 F.3d at 1137 (citation omitted). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (quotation marks and citation omitted). If an officer had probable cause or even arguable probable cause for the arrest, the officer is entitled to qualified immunity. *See Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) ("Qualified immunity applies when there was arguable probable cause for an arrest even if actual probable cause did not exist."). Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiff." *Davis v. Williams*, 451 F.3d 759, 762-63 (11th Cir. 2006) (quotation marks and citation omitted). To determine whether arguable probable cause exists, the court considers the totality of the circumstances and asks "'whether the officer's actions are objectively reasonable . . . regardless of the officer's underlying intent or motivation.'"

11

*Vaughan v. Cox*, 264 F.3d 1027, 1036 (11th Cir. 2001) (quoting *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997)).  "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors."  *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (quotation marks and citation omitted).  *See also Crosby*, 394 F.3d at 1332 ("Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could – not necessarily would – have believed that probable cause was present.").  Thus, qualified immunity protects even those officers who "reasonably but mistakenly conclude that probable cause is present."  *Montoute*, 114 F.3d at 184 (quotation marks and citation omitted).

"Whether a particular set of facts gives rise to probable cause or arguable probable cause for arrest depends . . . on the elements of the crime."  *Crosby*, 394 F.3d at 1333.  As it relates to this case, Officer Smith arrested plaintiff for second-degree assault.  Under Alabama law,

> "(a) A person commits the crime of assault in the second degree if the person does any of the following:
>
> > (1) With intent to cause serious physical injury to another person, he or she causes serious physical injury to any person.

(2) With intent to cause physical injury to another person, he or she causes physical injury to any person by means of a deadly weapon or a dangerous instrument.

(3) He or she recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.

. . .

§ 13A-6-21, Ala. Code 1975.

Smith contends that arguable probable cause for the arrest exists because a reasonable officer in the same circumstances and possessing the same knowledge could have believed plaintiff committed second-degree assault.  Doc. 77 at 11. Smith supports this position by contending that a clearly injured Britton stated that plaintiff hit him and that plaintiff approached the scene holding a shovel and stating that he hit Britton with it in self-defense.[9]  Doc. 77 at 12.  Plaintiff counters that a reasonable officer could have concluded that plaintiff merely defended himself against Britton, and, therefore, Smith lacked arguable probable cause for the arrest.  Doc. 84 at 15.  Plaintiff notes that Alabama law provides that "[a] person is justified in using physical force upon another person in order to defend

_____

[9]Smith also asserts that "plaintiff's own admission that he had hit Britton twice with the intention of hurting Britton" supports the existence of probable cause.  Doc. 77 at 11.  However, plaintiff testified that he did not tell Smith that he intended to injure Britton, only that he *defended* himself against Britton.  Doc. 77-2, Plaintiff Dep. at 107-08.

13

himself . . . from what he . . . reasonably believes to be the use or imminent use of unlawful physical force by that other person." § 13A-3-23, Ala. Code 1975.

Despite plaintiff's assertion of self-defense, the court finds that Smith had at least arguable probable cause to arrest him. A reasonable officer in the same circumstances and possessing the same knowledge could have believed that plaintiff "[w]ith intent to cause physical injury to another person . . . cause[d] physical injury . . . by means of . . . a dangerous instrument" or "recklessly cause[d] serious physical injury . . . by means of . . . a dangerous instrument." § 13A-6-21(a)(2) and (3), Ala. Code 1975. Britton's visible injuries and statement that he could not move his hip evidenced serious physical injury, and his statement that plaintiff hit him with a shovel (a fact plaintiff admitted) evidenced that plaintiff caused physical injury by means of a dangerous instrument. *See Buchanan v. State*, 602 So. 2d 459 (Ala. Crim. App.), *cert. denied*, 602 So. 2d 461 (1992) (holding that any item may become a dangerous instrument based on the manner in which the item is used). Further, plaintiff's arrival to the scene, holding a shovel, corroborated Britton's statements.

The fact that plaintiff told Smith that he hit Britton with the shovel in self-defense does not alter the conclusion that a reasonable officer *could have believed* that plaintiff committed second-degree assault. The Eleventh Circuit has advised

that although "[a]n arresting officer is required to conduct a reasonable investigation to establish probable cause," the officer "need not take 'every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person.'" *Ranklin v. Evans*, 133 F.3d 1425, 1435-36 (11th Cir. 1998) (quoting *Tillman v. Coley*, 886 F.2d 317, 321 (11th Cir. 1989)).  Indeed, even an assertion of self-defense does not eliminate arguable probable cause to arrest.  *See Wolk v. Seminole Cnty.*, 276 F. App'x. 898, 900 (11th Cir. 2008) (declining to conclude that a reasonable officer "must accept at face-value [defendant's] self-interested assertion that his striking or touching of [the victim] was defensive, on pain of violating the Constitution"); *Moscoso v. City of New York*, 92 F. Supp. 2d 310, 314 (S.D.N.Y. 2000) (holding that an officer is under no duty to credit the plaintiff's protestations of self-defense once probable cause is found to exist).  This is because probable cause is "judged not with clinical detachment but with a common sense view to the realities of normal life." *Rankin*, 133 F.3d at 1436.  As the Supreme Court has explained:  "The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released." *Baker*, 443 U.S. at 145.

Under the record here, a reasonable officer "could have believed that probable cause existed to arrest" plaintiff for second-degree assault.  *Kingsland*, 451 F.3d at 1232.  Therefore, plaintiff has not established that Smith violated his Fourth Amendment right to be free from unreasonable seizures.  Accordingly, Smith is entitled to qualified immunity.

        2.     *Plaintiff's remaining federal claims fail for lack of underlying constitutional violations.*

        a.     *Count II - Malicious Prosecution*

Count II alleges a § 1983 claim against the individual defendants for malicious prosecution.  Specifically, plaintiff alleges that the criminal proceedings "violated . . . [his] federal constitutional rights not to be maliciously prosecuted in violation of his Fourth and Fourteenth Amendments."  Doc. 3 ¶ 52.  However, the Supreme Court has held that the substantive due-process component of the Fourteenth Amendment does *not* provide the constitutional source of the right to be free from malicious prosecution.  *See Albright*, 510 U.S. at 272-75.  Accordingly, Count II is dismissed to the extent plaintiff alleges a § 1983 claim for malicious prosecution under the Fourteenth Amendment.

In contrast, the Eleventh Circuit has recognized the Fourth Amendment as an appropriate source for a malicious-prosecution claim under § 1983.  *See Uboh*

*v. Reno*, 141 F.3d 1000, 1002-04 (11th Cir. 1998); *Whiting v. Traylor*, 85 F.3d

581, 584 (11th Cir. 1996).  To prove the claim, a plaintiff must establish "(1) the

elements of the common law tort of malicious prosecution, and (2) a violation of

h[is] Fourth Amendment right to be free from unreasonable seizures."  *Kingsland*,

382 F.3d at 1234 (citing *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003), *cert.*

*denied*, 540 U.S. 879 (2003)).  In *Whiting*, the Eleventh Circuit explained that the

Fourth Amendment right to be free from malicious prosecution "is actually a

description of the right to be free from an unlawful seizure which is part of a

prosecution." 85 F.3d at 584 n.4.

Here, plaintiff alleges that "there was never any probable cause for

commencing criminal proceedings for Assault 2nd Degree or Assault 1st Degree."

Doc. 3 ¶ 52.  However, as discussed above, "arguable probable cause . . . is all that

is required for an arresting officer to be entitled to qualified immunity from a

Fourth Amendment claim."  *Wood*, 323 F.3d at 881 n.13.  The Eleventh Circuit

has held that courts must "use the same 'arguable probable cause' standard in the

qualified immunity context for § 1983 claims for both false arrest and malicious

prosecution, as both require a violation of the Fourth Amendment."  *Grider v. City*

*of Auburn*, 618 F.3d 1240, 1257 n.25 (11th Cir. 2010).  Thus, because arguable

probable cause to arrest existed, Smith is entitled to qualified immunity on the §

1983 claims for false arrest and malicious prosecution.  The § 1983 claim for

malicious prosecution under the Fourth Amendment is, therefore, also dismissed.

      b.    *Counts III and IV - Conspiracy*

Counts III and IV allege a conspiracy by the individual defendants to violate

plaintiff's Fourth Amendment right to be free from unreasonable seizures.  Count

III entitled, "42 U.S.C. [§] 1983 Failure to Prevent Unconstitutional Arrest [-]

Conspiracy," alleges that Harris and Hall "separately or in concert, intentionally

failed to intercede on behalf of [plaintiff] when [plaintiff's] constitutional rights

were being violated by Smith, and when said Defendants had a reasonable

opportunity to prevent said harm to [plaintiff]."  Doc. 3 ¶ 54.  Count IV entitled,

"42 U.S.C. [§] 1983 Conspiracy," alleges that the individual defendants:

> [A]cted jointly in concert in unlawfully arresting [plaintiff] without
> probable cause and maliciously prosecuting [plaintiff] for Assault 2nd
> degree by their knowing failure and indifference to the warrantless
> arrest without probable cause of [plaintiff] for Assault 2nd degree, the
> falsification of complaints against [plaintiff], and their alteration and
> removal of dispatcher's log from custody of the Brighton Police
> Department.

Doc. 3. ¶ 56.

"A plaintiff may state a § 1983 claim for conspiracy to violate constitutional

rights by showing a conspiracy existed that resulted in the actual denial of some

underlying constitutional right."  *Grider*, 618 F.3d at 1260 (citing *GJR Invs., Inc.*

*v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)).  Therefore, "[t]he conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy."  *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990).  Presumably, since plaintiff's complaint references the arrest and prosecution, plaintiff is contending that the individual defendants conspired to deprive him of his Fourth Amendment right to be free from unreasonable seizures.  However, as discussed above, he cannot establish that the arrest and prosecution violated this right because probable cause existed.[10] Because plaintiff has not established that the alleged conspiratorial acts violated a constitutional right, Counts III and IV fail.

Counts III and IV fail also because to succeed on a conspiracy claim, "the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons."

---

[10]Plaintiff also baldly asserts that the individual defendants falsified complaints and altered or removed the dispatch log, but he fails to allege specifically how these acts infringed on his constitutional rights.  To the extent plaintiff is contending that the individual defendants altered the dispatch log to conceal his first two calls about Britton, he failed to present any evidence indicating that the arresting officer, Smith, received notice of these calls from Harris (the dispatcher) or that he participated in the alleged cover up.  In the final analysis, that Harris or someone else *may* have altered the dispatch log does not negate Smith's arguable probable cause to arrest plaintiff.  Smith's actions must be judged with the information he had at the time he decided to arrest plaintiff and seek an indictment.  Where, as here, there is no objective evidence that he knew about plaintiff's two earlier calls about Britton, there is simply no credible basis to contend that he lacked arguable probable cause.

*Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992). Specifically, the

plaintiff must establish that "the defendants reached an understanding to violate

his rights." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir.

2002) (quotation marks and citation omitted). *See also Bailey v. Board of Cnty.*

*Comm's of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992) (holding that "the

linchpin for conspiracy is agreement, which presupposes communication"). Here,

plaintiff failed to allege any facts establishing that the individual defendants had

an *agreement* to violate his constitutional rights. Instead, plaintiff relies only on

speculation and conjecture to assert the existence of an agreement. This, however,

is insufficient to establish a conspiracy or to create a material issue of fact. *See*

*Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("'Speculation

does not create a genuine issue of fact; instead, it creates a false issue, the

demolition of which is a primary goal of summary judgment.'" (quoting *Hedberg*

*v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995))). For this reason,

Counts III and IV also fail.

Finally, it is unclear if plaintiff intended to bring a failure-to-intervene claim

in Count III, but any such claim also fails because of the lack of an underlying

constitutional violation. An officer is liable for failing to intervene under § 1983,

only if the officer "'fails or refuses to intervene *when a constitutional violation . . .*

*takes place* in his presence.'" *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) (quoting *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986) (emphasis added)).[11]  Because plaintiff is unable to establish a constitutional violation or that Harris and Hall knew of any such alleged violation occurring in their presence, the failure-to-intervene claim against these two defendants likewise fails.

    c.    *Count V - Municipal Liability*

Count V alleges municipal liability under § 1983 against the City of Brighton, claiming that Smith and Harris, as representatives of Brighton, "subjected [plaintiff] to unlawfully [*sic*] arrest and malicious prosecution causing the violations of plaintiff's constitutional rights not to be unlawfully arrested or maliciously prosecuted," and that "said actions and conduct by Smith and Harris were pursuant to a long standing custom or practice of the City of Brighton."  Doc. 3 ¶ 59.  Plaintiff further alleges that "Chief Hall, as a policy maker approved or was deliberately indifferent to said custom and practice."  *Id*.

A municipality is liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."

---

[11]Typically, such a claim is brought in conjunction with a claim of excessive force, which is not alleged here.  *See e.g.*, *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000).

*Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).  Importantly, the

injury must constitute a constitutional violation.  *See City of Los Angeles v. Heller*,

475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the

hands of the individual police officer, the fact that the departmental regulations

might have authorized the use of constitutionally excessive force is quite beside

the point"); *Vineyard v. County of Murray*, 990 F.2d 1207, 1211 (11th Cir. 1993)

("Only when it is clear that a violation of specific rights has occurred can the

question of § 1983 municipal liability for the injury arise.").  At best, plaintiff

claims that Brighton violated his constitutional rights because its employees

wrongfully arrested and prosecuted him in accordance with its policies.  However,

that a jury eventually exonerated plaintiff does not mean that Brighton violated his

constitutional rights because, after all, "[t]he Constitution does not guarantee that

only the guilty will be arrested.  If it did, § 1983 would provide a cause of action

for every defendant acquitted – indeed, for every suspect released." *Baker*, 443

U.S. at 145.  Because plaintiff has not established that the individual defendants

are liable for any underlying constitutional violations since probable cause existed

for his arrest and prosecution, his municipal liability claims must fail.

Additionally, the claims fail also because plaintiff failed to establish the existence

of a government policy or custom to violate his constitutional rights.  *See*

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-79 (1986) (a municipality may be liable under § 1983 for its own acts, not the acts of its employees); *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (holding that to establish municipal liability under § 1983 the plaintiff must show that the municipality had a custom or policy that caused a violation of his constitutional rights).  His conclusory assertion that his arrest and prosecution "were pursuant to a long standing custom or practice of the City of Brighton," doc. 3 ¶ 59, is insufficient to establish the existence of a policy or custom.  Therefore, Brighton is due summary judgment on all of plaintiff's claims against it.

## B.    *Supplemental State-Law Claims*

Count VII, entitled "State Law Claims [-] Conspiracy, False Arrest and Imprisonment, Malicious Prosecution," alleges that Smith and Britton conspired "to unlawfully arrest and maliciously prosecute [plaintiff] for Assault 2nd degree by giving false official statements, and by their testimony and altering official records."  Doc. 3 ¶ 64.  Plaintiff also alleges that "Smith arrested [plaintiff] without probable cause," doc. 3 ¶ 65, but, notably, despite the heading on Count VII, he fails to expressly plead any allegations of false imprisonment or malicious prosecution in Count VII.  This failure alone is sufficient for the court to grant

Smith's motion as to the claims of false imprisonment and malicious prosecution.[12]

Alternatively, summary judgment is also due because plaintiff cannot establish the

lack of probable cause showing necessary for claims of false arrest, false

imprisonment, or malicious prosecution.  *See Walker v. City of Huntsville*, No.

1090431, 2010 WL 3798070, at *16 (Ala. Sept. 30, 2010) (holding that a "claim

of false arrest requires proof that the defendant caused [her] to be arrested without

probable cause") (quotation marks and citation omitted); *Upshaw v. McArdle*, 650

So. 2d 875, 878-79 (Ala. 1994) (the existence of probable cause to arrest defeats a

claim of false imprisonment based upon the arrest); *Gulf States Paper Corp. v.

Hawkins*, 444 So. 2d 381, 387 (Ala. 1983) (holding that an essential element of

malicious prosecution is the lack of probable cause).  Alabama law provides that

probable cause "exists where the facts and circumstances within the officer's

knowledge and of which he has reasonably trustworthy information are sufficient

to warrant a man of reasonable caution in the belief that an offense has been or is

being committed." *Fennell v. State*, 51 Ala. App. 23, 282 So. 2d 373, *cert. denied*,

291 Ala. 778, 282 So. 2d 379 (1973).

---

[12]Smith does not assert state-agent immunity against plaintiff's state-law claims.  *See Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000) (plurality) (outlining when state agents are immune from civil liability); *Ex parte Butts*, 775 So. 2d 173 (Ala. 2000) (adopting the plurality's state-agent immunity test from *Cranman*).

Viewing the evidence in a light most favorable to plaintiff, the court finds that a reasonable jury could not conclude that Smith lacked probable cause to arrest plaintiff.  Specifically, as discussed above, Smith came to a scene in which he found Britton with his head split open, Britton identified plaintiff as his attacker – a fact plaintiff acknowledged –, and plaintiff approached Smith holding the shovel he used to hit Britton.  Moreover, plaintiff's claim that he hit Britton in self-defense does not negate probable case to arrest under Alabama law.  *See Kinard v. State*, 495 So. 2d 705 (Ala. Crim. App. 1986).  If it did, every person facing arrest would claim self-defense and municipalities would face endless litigation.  On the facts here, plaintiff has not established a lack of probable cause for the arrest and prosecution, and, as such, his claims of false arrest, false imprisonment, and malicious prosecution fail.

Finally, as to the claim of conspiracy to conduct an unlawful arrest or malicious prosecution, Alabama law provides that a plaintiff must prove that the defendant agreed with at least one other person "to accomplish an unlawful end (by civil law standards) or to accomplish a lawful end by unlawful means." *Eidson v. Olin Corp.*, 527 So. 2d 1283, 1285 (Ala. 1988).  Here, plaintiff has not presented any evidence indicating that Smith and Britton, the members of the alleged conspiracy, had any such agreement and, in fact, Smith denied the

existence of one.  Specifically, when asked whether the fact that he knew Britton affected his decisions, Smith testified "that has nothing to do with whether I make a decision. . . . it has no influence on me if that's my best friend or if that's my worst friend.  I'm going to do the job just the same."  Doc. 77-4, Smith Dep. at 143-44.  Viewing the evidence in a light most favorable to plaintiff, the court finds that a reasonable jury could not conclude that Smith and Britton had an agreement to unlawfully arrest and maliciously prosecute plaintiff.  Therefore, plaintiff's state-law conspiracy claims fail also.

## IV.  CONCLUSION

Having determined that there are no genuine issues of disputed fact, the court hereby grants summary judgment in favor of defendants on all counts and dismisses this case with prejudice.

DONE this 31st day of January, 2011.

 

 

 

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE